******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT B.*
(AC 42423)

Lavine, Prescott and Moll, Js.

*Syllabus*

Convicted of the crimes of unlawful restraint in the first degree and breach
of the peace in the second degree in connection with an incident involv-
ing his former wife, T, and their two sons, the defendant appealed to
this court. He claimed that he was denied his constitutional right to a
fair trial and that the trial court erred by not instructing the jury on a
certain lesser included offense. *Held*:

1. The defendant could not prevail on his claim that his rights to due process
   and a fair trial were violated when T testified on cross-examination as
   to his prior bad acts and arrests, his claim being unpreserved and not
   of constitutional magnitude: the claim was not reviewable because the
   defendant failed to preserve it at trial by either moving to strike the
   testimony at issue or seeking a curative instruction; moreover, the defen-
   dant's claim was not of constitutional magnitude, and, therefore, not
   reviewable under the second prong of *State* v. *Golding* (213 Conn. 233),
   the admission of evidence of a defendant's other crimes being controlled
   by the law of evidence, not principles of constitutional law.

2. The defendant could not prevail on his claim that he was denied a fair
   trial due to prosecutorial impropriety in that one of the two prosecutors
   who represented the state objected during his cross-examination of a
   witness despite not having conducted the direct examination of that
   witness, the claimed error having not constituted prosecutorial impropri-
   ety; our rule of practice (§ 5-4), on which the defendant based his claim,
   concerns the examination or cross-examination of a single witness by
   counsel for one party, and there is nothing explicit in the rule regarding
   whether one counsel alone is required to object to opposing counsel's
   examination of a witness.

3. The defendant could not prevail on his claim that the trial court erred
   by failing to instruct the jury on the lesser included offense of unlawful
   restraint in the second degree, his claim being unpreserved, as it was
   waived; the defendant did not submit a request to charge, ask the court
   to include an instruction on that lesser included offense after he had
   reviewed the court's proposed charge, or take an exception to the charge
   as given, and therefore acquiesced in the charge and waived the right
   to raise the claim on appeal.

Argued June 29—officially released October 6, 2020

*Procedural History*

Substitute information charging the defendant with
the crimes of unlawful restraint in the first degree and
breach of the peace in the second degree, brought to
the Superior Court in the judicial district of Stamford-
Norwalk, geographical area number one, and tried to
the jury before *Blawie, J.*; verdict and judgment of
guilty, from which the defendant appealed to this
court. *Affirmed*.

*Michael J. Tortora*, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with
whom, on the brief, were *Richard J. Colangelo, Jr.*,
former state's attorney, and *Michael Nemec*, deputy
assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Robert B.,[1] appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that (1) he was denied his constitutional right to a fair trial when a witness repeatedly testified about the defendant's prior bad acts and arrests, (2) the court erred by not instructing the jury on the lesser included offense of unlawful restraint in the second degree, and (3) he was denied a fair trial due to prosecutorial impropriety because one of the two prosecutors who represented the state objected during the defendant's cross-examination of a witness despite not having conducted the direct examination of that witness. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant and his former wife, T, were divorced in 2003. They have two sons, P and D, who were nineteen and sixteen, respectively, at the time of the underlying incident. On the morning of August 12, 2017, T and the sons (collectively, victims) were leaving the office of a Stamford dentist by the rear stairs. They saw a man wearing a hat and sunglasses, facing away from them, standing at the bottom of the stairs, blocking their way. When the victims reached the bottom of the stairs, the man grabbed D's arm and stated: "Happy Birthday . . . we got to go to court."[2] The victims then recognized the defendant. T instructed the sons to get into her car. Before they could do so, the defendant grabbed D from behind, held him around the neck and stomach, and dragged him toward his vehicle, which was parked in front of the building. T and P yelled for the defendant to stop and tried to pull D from the defendant's grasp. D struggled to free himself. His shoes came off and his feet were dragged on the ground as he was pulled by the defendant. A dental patient who noticed the incident went into the dentist's office and asked someone to called 911. The defendant put his cell phone in T's face and stated that he was recording her.

T pulled the defendant's sunglasses from his face and threw them into the street. P blocked the defendant from putting D into his car. A third party came from a nearby business and pushed the defendant away from D, who was able to run across the street away from the defendant. The defendant got into his vehicle and drove away. After the police arrived, the victims went to the police department and gave written statements.

Members of the Stamford Police Department investigated the incident and arrested the defendant pursuant to a warrant on August 18, 2017.[3] He was charged in a

long form information with unlawful restraint in the first degree and breach of the peace in the second degree.[4] The defendant, who represented himself, pleaded not guilty and elected to be tried by a jury. The presentation of evidence commenced on September 20, 2018. On September 24, 2018, the jury found the defendant guilty of both charges. The court sentenced the defendant to eighteen months of incarceration on the unlawful restraint conviction and six months of incarceration on the breach of the peace conviction, to be served concurrently, for a total effective sentence of eighteen months in prison and a $5000 fine. The defendant appealed.

I

The defendant first claims that his rights to due process and a fair trial were violated when a witness, T, testified on cross-examination as to the defendant's prior bad acts and arrests. The defendant's claim fails because it is unpreserved and is not of constitutional magnitude.

The following facts are relevant to the defendant's claim. The state called T to testify about the August 12, 2017 incident. On cross-examination, the defendant questioned T in such a way that he elicited the testimony about which he now complains, claiming that the testimony violated his constitutional right not to have evidence of his prior bad acts placed before the jury.[5] The defendant argues that "[a]t no time during the trial did the trial court ever instruct [T] to stop making such improper statements nor did [the court strike] the evidence from the record or give a curative instruction."[6] To support his claim, the defendant relies on *State* v. *Ferrone*, 97 Conn. 258, 116 A. 336 (1922). See id., 266 ("[e]vidence tending to show the commission of other crime on the part of the accused, or facts disclosing his bad character or repute, are not material or relevant to the charge against the accused, and should never be permitted to be introduced; for its purpose can be none other than to prejudice the jury against the accused, and hence to deny him the fair trial which the law guarantees him of being proven guilty of the crime with which he stands charged by evidence which our law accepts"). The defendant also relies on cases in which our appellate courts have addressed the propriety of the state's having introduced a defendant's prior misconduct. See, e.g., *State* v. *Nash*, 278 Conn. 620, 655–60, 899 A.2d 1 (2006) (rationale of rule is to guard against use of prior misconduct merely to show evil disposition of accused); *State* v. *Boykin*, 74 Conn. App. 679, 682–89, 813 A.2d 143 (remark's lack of specificity did not unfairly prejudice defendant), cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

In response, the state argues that there was no error because the defendant, not the state, elicited T's testimony at issue during his cross-examination of her.[7] See

footnote 5 of this opinion. More significantly, however, the state contends that the claim is evidentiary in nature, not constitutional, and therefore, is not reviewable because the defendant failed to move to strike T's testimony and thus preserve the claim for appellate review. We agree that the claim is not reviewable because the defendant failed to preserve it at trial by either moving to strike the testimony or seeking a curative instruction.[8]

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

The defendant requests, if we determine that the claim is not preserved, that we review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). A defendant can prevail on an unpreserved claim under *Golding* if four conditions are met: (1) the record is adequate for review, (2) the claim is of constitutional magnitude alleging the violation of a fundamental right, (3) the "violation . . . exists and . . . deprived" the defendant of a fair trial, and (4) if subject to harmless error analysis, the state failed to demonstrate the harmlessness of the error beyond a reasonable doubt. See *State* v. *Golding*, supra, 239–40. "[T]he first two [prongs of *Golding*] involve a determination [as to] whether the claim is reviewable; the second two . . . involve a determination [as to] whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002). The defendant's claim is not reviewable because it is not of constitutional magnitude.

Generally, "evidence of the commission of other crimes or specific acts of misconduct is inadmissible to prove that a defendant is guilty of the crime charged against him." *State* v. *Talton*, 197 Conn. 280, 289, 497 A.2d 35 (1985). The admission of evidence of a defendant's other crimes is controlled by the law of evidence, not principles of constitutional law. See *State* v. *Gardner*, 297 Conn. 58, 65, 1 A.3d 1 (2010) (erroneous introduction of prior misconduct evidence involves claim arising under state law and does not involve constitutional right). Because the defendant's unpreserved claim is an evidentiary one, it is not of constitutional magnitude. He, therefore, is not entitled to review pur-

suant to *Golding.*

## II

The defendant's second claim is that the court erred by failing to instruct the jury on the lesser included offense of unlawful restraint in the second degree.[9] The defendant cannot prevail on the claim because it is unpreserved.

The following facts are relevant to the defendant's claim. On September 20, 2018, immediately prior to the swearing in of the jurors, the court, the defendant and the prosecutors discussed a variety of matters related to the trial. The court asked the defendant whether there was anything that he wished to say. The defendant represented that the last time he was in court with the prosecutors, Steven Weiss and Michael Nemac, Weiss mentioned that he wanted "to drop the unlawful restraint in the first down to unlawful restraint in the second." The defendant was concerned that the state was adding an additional charge against him. The court understood the defendant's concern and explained that the state could not add an additional charge at that time. Nemec then addressed the court: "The state would ask—at the time we discuss the charge to the jury, the state is going to be asking for—I think this is what [the defendant] is referring to. I did bring it up with Judge White. Just—I wanted it on the record I'm providing notice that the state would be asking for unlawful restraint in the second degree as a lesser included offense. We'd be asking Your Honor for—at the time of charging that that charge be included."

The court explained the lesser included defense doctrine to the defendant. The court then stated: "So I understand your point and then we can have additional discussions about this as the—when the time comes, but the state should be prepared to submit a properly drafted request to charge, especially for the benefit of [the] self-represented party as to what you're discussing. And I've only given you very preliminary discussion of it. *I have not made a ruling on whether a lesser included offense is proper*, but in light of what the state said, that's sort of what I'm telling you." (Emphasis added.)

During the presentation of evidence, the defendant placed into evidence the incident report from the Stamford Police Department listing the offenses committed as breach of the peace in the second degree and unlawful restraint in the second degree. At the conclusion of evidence, the court inquired of the state whether it would be seeking a lesser included offense instruction with respect to the charge of unlawful restraint in the second degree as it had previously indicated. The state responded that it would file a request to charge on Monday, September 24, 2018. The court stated that it would take up the matter during a charge conference.

On Monday, when the court asked the state whether it was proceeding on any lesser included offense, the state answered that it was not. The court stated that it was a two count information, as drafted.

During the charge conference, the court discussed the procedures for summation and informed the defendant that he could not make any argument regarding plea offers because they were not in evidence. But, because the police incident report that the defendant had put into evidence stated the offense was unlawful restraint in the second degree, the defendant could argue that crime. See footnote 3 of this opinion. The court provided the parties with copies of its proposed charge, which it reviewed with the defendant and the prosecutors and solicited comments from them.[10] Notably, the defendant did not file a request to charge, and he did not request that the court instruct the jury on the lesser included offense of unlawful restraint in the second degree. During the state's final argument, Nemec argued that the jury should find the defendant guilty of unlawful restraint in the first degree, explicitly discussing the elements of that crime. Nemec did not mention unlawful restraint in the second degree. When the defendant presented his final argument, he did not mention unlawful restraint in the second degree. The court instructed the jury only on unlawful restraint in the first degree and breach of the peace in the second degree. The defendant took no exception to the instruction as given by the court.

On appeal, the defendant claims that the state "clearly and unequivocally placed the defendant on notice that the lesser included charge of unlawful restraint in the second degree would be charged." He argues that, although he did not take an exception to the charge, the record does not indicate that he acquiesced to the charge as he was "under the impression [that] he could argue it during closing and therefore, it cannot be concluded that [he] abandoned his request."[11] The state argues that the claim is unpreserved and, therefore, the defendant is not entitled to review of it. We conclude that the defendant waived his right to appellate review of his claim of instructional error.

In Connecticut, "unpreserved claims of improper jury instructions are reviewable under [*State* v. *Golding*, supra, 213 Conn. 239–40] unless they have been . . . implicitly waived." *State* v. *Kitchens*, 299 Conn. 447, 468, 10 A.3d 942 (2011). "[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the

existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim present on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Citation omitted; internal quotation marks omitted.) Id., 469.

Implied waiver may be found when counsel fails "to take exception or object to the instructions together with (1) acquiescence in, or expressed satisfaction with, the instructions following an opportunity to review them, or (2) references at trial to the underlying issue consistent with acceptance of the instructions ultimately given." Id., 469–70. The rationale for the implied waiver rule is that "[t]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to . . . ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) Id., 470.

In the present case, the defendant did not submit a request to charge, ask the court to include an instruction on the lesser included offense of unlawful restraint in the second degree after he had reviewed the court's proposed charge, or take an exception to the charge as given. The defendant therefore acquiesced in the charge and waived the right to raise the claim on appeal. The defendant's instructional claim therefore is not reviewable.

III

The defendant's third claim is that he was denied a fair trial due to prosecutorial impropriety because one of the two prosecutors who represented the state objected during the defendant's cross-examination of a witness despite not having conducted the direct examination of that witness. We disagree.

We begin with the well-known standard of review for claims of prosecutorial impropriety. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Internal quotation marks omitted.) *State* v. *Pernell*, 194 Conn. App. 394, 403, 221 A.3d 457, cert. denied, 334 Conn. 910, 221 A.3d 44 (2019). If we first determine that an impropriety exists, we then apply the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Because we conclude that there was no prosecu-

torial impropriety as claimed by the defendant, we need not address the *Williams* factors.

The defendant grounds his claim of prosecutorial impropriety in the following facts, about which there is no dispute. Prosecutors Nemec and Weiss represented the state at trial. The defendant has assumed that Nemec was the lead counsel as he called all of the state's witnesses and conducted the direct examination of each of them. Nemec also made the state's final argument. During the defendant's cross-examination of the state's witnesses, however, Weiss voiced objections to the defendant's questions. Also, both Nemec and Weiss responded to questions from the court throughout trial. The defendant acknowledges that it is common practice for a party to have lead counsel and a second chair, but that it was fundamentally unfair for both Nemec and Weiss to "flip flop" as to who was doing the examination and who was objecting during his cross-examination of the witnesses whom Nemec called and examined. The defendant claims that he was prejudiced by having to defend himself against not one, but two, prosecutors at the same time. Although the defendant never objected to the prosecutor's "flip flop," he claims on appeal that the court should have stopped the "flip flop" from happening and issued a warning to the prosecutors. The defendant also claims that had Weiss' objections not been sustained by the court, he would have been able to present further evidence through cross-examination that would have led the "jury to think differently."[12]

The defendant bases his claim on Practice Book § 5-4. Section 5-4 provides: "The counsel who commences the examination of a witness, either in chief or on cross-examination, must alone conduct it; and no associate counsel will be permitted to interrogate the witness, except by permission of the judicial authority."[13]

"The interpretative construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. . . . In seeking to determine [the] meaning [of a statute or rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]. . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Fraboni*, 182 Conn. App. 811, 818–21, 191 A.3d 247 (2018). "We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise. . . . Put differently, we follow the clear meaning of unambiguous rules, because

[a]lthough we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which a strict adherence to them [will] work surprise or injustice." (Internal quotation marks omitted.) Id., 822.

Practice Book § 5-4 concerns the examination or cross-examination of a single witness by counsel for one party. Counsel who commences the examination or cross-examination alone must conduct it; no associate counsel may conduct the examination without permission of the judicial authority. There is nothing explicit in § 5-4 regarding whether one counsel alone is required to object to opposing counsel's examination of a witness. Considering all of the circumstances present, we do not conclude that the claimed error constitutes prosecutorial impropriety, although we do not approve of the practice engaged in by the prosecutors and discourage its use in the future. See, e.g., *State* v. *Bermudez*, 195 Conn. App. 780, 824, 228 A.3d 96 (not every misstep by prosecutor amounts to impropriety), cert. granted on other grounds, 335 Conn. 908, 227 A.3d 521 (2020); *State* v. *Roberts*, 158 Conn. App. 144, 152, 118 A.3d 631 (2015) (same).

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] The defendant represented himself at the criminal trial but was represented by counsel at sentencing and on appeal.

[2] Although the defendant and T were divorced in 2003, they apparently have had a contentious and litigious relationship since that time and the sons allegedly are estranged from the defendant. The record, however, does not disclose why the defendant acted as he did on August 12, 2017.

[3] The offenses listed on the Stamford Police Department incident report were breach of the peace in the second degree and *unlawful restraint in the second degree*.

[4] Count one of the information charged the defendant with unlawful restraint in the first degree, in that "in the city of Stamford, on [or] about August 12, 2017, [the defendant] did restrain another person, [D], under [circumstances] which did expose that person to a substantial risk of physical injury in violation of [§] 53a-95 (a) of the . . . General Statutes."

Count two of the information charged the defendant with breach of the peace in the second degree, in that "in the city of Stamford, on [or] about August 12, 2017, [the defendant] with intent to cause inconvenience, annoyance and alarm, and recklessly creating a risk thereof, such person did engage in fighting and in violent, tumultuous, and threatening behavior in a public place, in violation of [§] 53a-181 (a) (1) of the . . . General Statutes."

[5] As examples of the testimony about which he complains, the defendant included the following portions of his cross-examination of T in his brief:

"[The Defendant]: Okay. Okay. So . . . when you came out of the dentist office, you walked into the parking lot?

"[T]: When I came out of the dentist office, I opened the door and there were the stairs and there [you were] blocking them.

"[The Defendant]: Blocking the stairs?

"[T]: That's correct.

"[The Defendant]: So you were stuck on the stairs?

"[T]: Your body was to the right. There's three stairs down exactly. Your

body was right at the bottom of the third step. And immediately I started panicking when I realized it was you because you had—

"[The Defendant]: Why did you panic?

"[T]: —glasses and—

"[The Defendant]: Why did you panic again?

"[T]: Because we have—you've been estranged from the kids since you were last arrested when [P] was twelve years old and you picked him up intoxicated at the police station—

"[The Defendant]: Estranged—excuse me, Your Honor. Just—

"The Court: Sustained.

"[T]: —and they—and you haven't seen the—

"The Court: Ma'am—ma'am.

"[The Defendant]: Ma'am.

"The Court: I sustained the objection.

* * *

"[The Defendant]: You mentioned the word blocking.

"[T]: I'm very fearful of you and your body . . . .

"[The Defendant]: And why are you very fearful?

"[T]: Because you've done nothing but harass me and the children for years—

"[The Defendant]: Well, I'm sorry, how did I harass you?

"[T]: —and we have nothing but protective orders against you for the past twelve years.

"[The Defendant]: She's rambling on—

"The Court: Stop. All right.

* * *

"[The Defendant]: So why, prior to the incident, did you not want to allow the parenting time with the minor child to occur?

"[T]: I was going to court for supervised visits because [the defendant] was arrested when my son . . . was twelve years old at an exchange at the police department. He showed up drunk and he asked the workers there if they had green cards to be working there. . . .

"[The Defendant]: Wait, wait, wait. You're rambling on. Your Honor, we just asked her—

"The Court: Stop. Stop ma'am. Ma'am.

"[T]: I'm sorry.

"The Court: All right. You asked a question, but again, we have to focus on the events of August 12, 2017.

* * *

"[The Defendant]: And prior to that, did you give the children up on a weekly basis like you're supposed to? . . .

"[T]: The children were always given to you . . . before you got drunk and arrested. And [P] was twelve years old and I went to court for supervised visits, which we fought about for six years. . . .

"[The Defendant]: You keep mentioning this drunk thing. All right. Do you have any . . . proof that there—

"[T]: You were—yes. It's in the evidence that you were—you went to jail for sixty days.

"[The Defendant]: Excuse me, Your Honor.

"[T]: You were false reporting—

"The Court: Ma'am—ma'am, excuse me. Ladies and gentlemen, I'm going to ask you to step out while we take this up.

* * *

"[The Defendant]: Why do you tell the minor child that he doesn't have to listen to his father?

"[T]: Because you're unsafe. We've had protective orders against you for the past twelve years. I was told by a judge you need [a] psychiatric evaluation before you even could have supervised visitation with the children. And we've been nothing but scared for the past eight years with nothing but protective orders against you. . . .

"[The Defendant]: So why doesn't the child have to listen to their father again?

"[T]: He has a psychiatric problem. We've had protective orders against him . . . ."

[6] The record discloses that at one point during the defendant's cross-examination of T, the court stopped the examination and excused the jury. The court stated to the defendant: "Sir, you have to keep the questioning focused on the events of August 12, 2017. . . . I get the fact this was a contentious divorce, but [these are] irrelevant questions and answers. Again, I don't want this trial to get off track. The focus has to remain on the events

of August 12, 2017, not whether or not something happened with [D's] older brother, [P], when he was twelve. That's not relevant to what's going on in this trial, and I don't want that to become the focus of this trial.

"So the questioning has to be more relevant and your answer—you can wait till you finish the question, ma'am, to decide whether or not—but it just should be in response to either a question from [Assistant State's] Attorney Nemec or a question from [the defendant]. But volunteering information about past incidences or arrests or—again . . . ."

[7] "So long as the answer is clearly responsive to the question asked, the questioner may not later secure a reversal on the basis of invited error," and this includes those answers that are "not phrased in language the defendant would have preferred . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 212 Conn. 593, 611, 563 A.2d 671 (1989); see also *State* v. *Holley*, 327 Conn. 576, 621, 175 A.3d 514 (2018) (court properly declined to strike answer that was responsive to question asked).

[8] In his brief, the defendant argues that he preserved his claim because he objected to T's use of the word "estranged." The state argues that the defendant did not preserve his claim because the defendant did not " 'distinctly raise' " or state the basis of his objection to put the court on notice. See Practice Book § 60-5. Although the court sustained the defendant's objection, the record is unclear as to the basis of the defendant's objection. Therefore, it was not properly preserved.

[9] The state charged the defendant in a long form information with violation of § 53a-95 (a), unlawful restraint in the first degree. General Statutes § 53a-95a (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

General Statutes § 53a-96 (a), unlawful restraint in the second degree, provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

[10] The defendant objected to a portion of the breach of the peace instruction, but that instruction is not at issue on appeal.

[11] The defendant also contends, pursuant to *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), that the court erred by failing sua sponte to instruct the jury on the lesser included offense of unlawful restraint in the second degree. Under *Whistnant*, "a lesser included offense instruction should be given when: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Rudd*, 62 Conn. App. 702, 706, 773 A.2d 370 (2001). The defendant's contention is predicated on the police incident report that he placed into evidence charging him with unlawful restraint in the second degree. Even though the court advised the defendant that he could argue the evidence regarding the affidavit and information, the transcript of the defendant's final argument discloses that he made no such argument.

[12] The defendant did not identify what evidence he was prevented from presenting due to Weiss' objections and how "the jury [would have thought] differently."

[13] See also Practice Book § 5-8 ("[n]o more than one counsel on each side shall be heard on any question of evidence . . . without permission of judicial authority"); E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 6.14, p. 344 (direct examination).