MULLINS, J.
**467 This appeal arises from the conviction of the defendant, Jan G., who murdered his father and physically assaulted his elderly mother. At trial, the defendant insisted upon testifying that Satan had taken over his body and performed these acts. As a result, defense counsel requested, based on the Rules of Professional Conduct generally, that the defendant be permitted to give that testimony in narrative form. The trial court granted that request, and the defendant subsequently testified to his version of events in that manner. Ultimately, the jury found the defendant guilty of murder in violation of General Statutes § 53a-54a (a) and assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a) (1). This appeal followed.[1]
The issue we must resolve in this appeal is whether the trial court's decision to allow the defendant to testify in narrative form caused him to be self-represented during his testimony without a proper waiver of his right to counsel. The defendant claims that State v. Francis , 317 Conn. 450, 452, 118 A.3d 529 (2015), wherein this court held that the defendant, Maurice *1134 Francis, was self-represented during his narrative testimony and that his waiver of the right to counsel was not voluntary, controls the present case and requires a new trial. Because of the factual distinctions between this case and Francis , however, we conclude that our decision in that case does not control the outcome of the present appeal. Instead, on the basis of our review of the facts and circumstances of the present case, we conclude that the defendant was not self-represented **468 during his testimony and, therefore, is not entitled to a new trial. Accordingly, we affirm the judgment of the trial court.
The record reveals the following facts, which the jury reasonably could have found, and procedural history. The defendant lived in the first floor apartment of a two-family home. His ninety year old father and seventy-four year old mother lived in the second floor apartment.
On October 13, 2011, the defendant consumed a large quantity of cocaine. Thereafter, in the early morning hours of October 14, 2011, the defendant entered his parents' apartment and punched his mother in the face. The punch knocked out one of his mother's upper front teeth, cut her lip, and caused swelling and bruising extending from her left eye to the bridge of her nose. After assaulting his mother, the defendant armed himself with an ornamental sword from his apartment and knives from his parents' kitchen. With these weapons, he proceeded to attack and kill his father.
In this attack, the defendant gouged out the father's left eye, broke his nose, slit his neck twice, and forced the handle of a potato masher down his throat. The defendant also amputated his father's penis and ate it. In all, the autopsy subsequently performed on the father's body revealed approximately seventy-six sharp force wounds.
As the defendant attacked his father, his mother ran for help. When the police officers entered the first floor apartment, they found the defendant seated on his couch, using his computer, naked from the waist down, and covered in blood. The defendant was sweating, and it appeared to the officers that he was under the influence of some type of illicit drug. Nevertheless, the officers observed that he also appeared to understand what was being said to him. The officers discovered **469 the lifeless body of the defendant's father on the floor of the second floor apartment. He was pronounced dead at the scene. The defendant was arrested.
After his arrest, the defendant tested positive for cocaine and opiates. Both in his apartment and in the hospital on October 14, 2011, the defendant asserted that he was Satan. Specifically, the defendant stated the following to the officers in his apartment shortly after his arrest: "I am Satan. I made a pact with your earth and you did not keep your end of the deal. I order you to release me and take these cuffs off ...." Even though the defendant identified himself as Satan at times, at other points during his interactions with the police that evening he also referred to himself by his real name. At the police department later that day, the defendant told officers "that it was the drugs ... crack and cocaine." The defendant then asked: "What do you think I'll get? Ten, twenty years?"
The state charged the defendant with one count of murder in violation of § 53a-54a (a) and one count of assault of an elderly person in the third degree in violation of § 53a-61a (a) (1). The defendant pleaded not guilty to these charges, elected a jury trial, and was found competent to stand trial.
*1135 At trial, the defense introduced the testimony of Alec Buchanan, a forensic psychiatrist, who conducted a psychiatric evaluation of the defendant while he was awaiting trial. Buchanan explained that the defendant told him that he began to use cocaine in 2008, developed an interest in Satanism shortly thereafter, and believed Satan took over his body to perpetrate the crimes against his parents. Buchanan also acknowledged that the onset of the defendant's symptoms coincided with his cocaine dependence and that the symptoms resolved when he no longer had access to cocaine.
**470 Following Buchanan's testimony, defense counsel requested time to discuss with the defendant whether he would testify on his own behalf. The trial court granted that request and permitted a recess. When the trial resumed two days later, defense counsel informed the trial court, outside the presence of the jury, that the defendant was asserting his right to testify.
The trial court then canvassed the defendant on his decision to testify. After this canvass, defense counsel requested that the defendant's testimony proceed in a narrative format. When the trial court asked why, defense counsel specified that his request was not based on rule 3.3 of the Rules of Professional Conduct,[2] but "on other parts of the rule[s] ...."[3] The state did not object to this request, provided it could object during the defendant's testimony and conduct cross-examination.
Accordingly, the trial court proceeded to canvass the defendant a second time. This canvass focused specifically on the defendant's decision to testify in narrative form. The trial court explained to the defendant that his testimony would be in a different format than the testimony of other witnesses and that the court would **471 instruct the jury not to speculate as to why the defendant was testifying in narrative form. The trial court then warned the defendant that his attorney might not be "effective in representing" him during the narrative testimony. The trial court then asked the defendant if he still wished to testify in narrative form, and the defendant confirmed that he did.
After the trial court completed this second canvass, the jury entered the courtroom. The trial court instructed the jury that the defendant would testify in a "somewhat partial narrative form ...." After the defendant took the stand, defense counsel inquired about the defendant's name, age, and schooling, and then asked the defendant broadly "about [October 14, 2011] and [the] events leading up to October 14, 2011 ...." The defendant then testified, in narrative form, that his drug use led to an interest in Satanism and that, on October 14, 2011, after taking drugs the evening before, he was possessed by *1136 Satan. He told the jury that Satan took his body to his parents' apartment and killed his father. The state then cross-examined the defendant. Following cross-examination, defense counsel conducted a brief redirect examination of the defendant. After redirect, defense counsel rested the defendant's case, and, after the state called a rebuttal witness, defense counsel presented closing argument to the jury.
Ultimately, the jury returned a verdict of guilty on both counts. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to sixty years of imprisonment. Thereafter, defense counsel filed a motion for a new trial, which was denied. This appeal followed. Additional relevant facts will be set forth as necessary.
The defendant claims on appeal that, pursuant to State v. Francis , supra, 317 Conn. at 452, 118 A.3d 529, he is entitled to a new trial because in order to exercise his right to **472 testify, he was compelled to self-represent without a proper waiver of his right to counsel. Because the defendant did not raise this claim before the trial court, his claim is unpreserved, and he seeks review pursuant to State v. Golding , 213 Conn. 233, 567 A.2d 823 (1989).[4] In response to the defendant's argument, the state asserts, inter alia, that the defendant's claim is unreviewable pursuant to the second prong of Golding . Specifically, the state contends that the trial court's decision to allow the defendant to testify narratively was a matter of trial management and, therefore, does not raise a constitutional question. Alternatively, the state argues that, even if reviewable, the defendant's claim fails the third prong of Golding because the defendant's narrative testimony did not constitute self-representation. Instead, the state contends, the defendant was represented throughout his testimony, and, therefore, no constitutional violation occurred.
For purposes of the present appeal, we assume that the defendant's claim is of constitutional magnitude, and, thus, we assume that the defendant has satisfied the second prong of Golding . See State v. Mejia , 233 Conn. 215, 232, 658 A.2d 571 (1995) (analyzing defendant's claim pursuant to third prong of Golding without discussing merits of first two prongs); see also State v. Golding , supra, 213 Conn. at 240, 567 A.2d 823 ("In the absence of any one of [these four] conditions, the defendant's claim **473 will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on which-ever condition is most relevant in the particular circumstances."). We conclude, however, that the defendant has not shown a constitutional violation existed and deprived him of a fair trial because, under the circumstances of the present case, his narrative testimony did not constitute self-representation. Consequently, the defendant's claim fails under the third prong of Golding .
We begin with the following principles. The sixth amendment to the United States constitution guarantees a criminal defendant the right to the assistance of counsel at trial.
*1137 Gideon v. Wainwright , 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963). The fourteenth amendment's due process clause extends this right to state criminal prosecutions. Id., at 342, 83 S.Ct. 792. "Embedded within the sixth amendment right to assistance of counsel is the defendant's right to elect to represent himself, when such election is voluntary and intelligent. See, e.g., Faretta v. California , 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975)." State v. Braswell , 318 Conn. 815, 827, 123 A.3d 835 (2015). "We require a defendant to clearly and unequivocally assert his right to self-representation ...." Id., at 827-28, 123 A.3d 835. This "threshold requirement ... is one of many safeguards of the fundamental right to counsel." (Internal quotation marks omitted.) State v. Pires , 310 Conn. 222, 231, 77 A.3d 87 (2013). To be sure, "[v]iolation of the right to counsel at a critical stage of the criminal proceedings is structural error, requiring a new trial without proof of actual prejudice." State v. Francis , supra, 317 Conn. at 460, 118 A.3d 529.
In addition to his sixth amendment right to counsel, "[a] criminal defendant also has a right to testify on his own behalf, secured by the fifth, sixth, and fourteenth amendments to the federal constitution. See Rock v. Arkansas , 483 U.S. 44, 51-52, 107 S.Ct. 2704, 97 L.Ed. 2d 37 (1987). The right to testify includes the right to **474 testify fully, without perjury, to matters not precluded by a rule of evidence." (Internal quotation marks omitted.) State v. Francis , supra, 317 Conn. at 460, 118 A.3d 529.
"The defendant's right to testify ... cannot be waived by counsel.... Indeed, in the absence of an intention to offer perjurious testimony, [i]f a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request.... [I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.... [However] while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense.... By exercising his constitutional right to the assistance of counsel, a defendant does not relinquish his right to set the parameters of that representation." (Citations omitted; internal quotation marks omitted.) Id., at 460-61, 118 A.3d 529.
With these principles in mind, we turn to the facts of the present case. We must ascertain whether, as the defendant contends, he was compelled to represent himself in order to vindicate his right to testify on his own behalf. To do so, we begin with the threshold question of whether the defendant was represented by counsel during his narrative testimony. We conclude that he was represented by counsel during his testimony and, therefore, has failed to establish the existence of a constitutional violation. Accordingly, he is not entitled to a new trial.
In the present case, defense counsel's actions before, during, and after the defendant's narrative testimony demonstrate that the defendant was not self-represented. See People v. Nakahara , 30 Cal. 4th 705, 717, 134 Cal.Rptr.2d 223, 68 P.3d 1190 (2003) (concluding that "defendant at no time before, after, or during his narrative testimony 'waived' his right to counsel's assistance"
**475 when "counsel's assistance was ... available during all other stages of trial"). Indeed, before to the defendant testified in narrative form, defense counsel: represented the defendant during jury selection; filed and argued multiple pretrial motions in limine, including motions seeking to suppress evidence and preclude testimony; vigorously cross-examined the state's witnesses; and presented the testimony *1138 of three witnesses for the defense. Once the defendant took the stand, defense counsel asked him preliminary questions regarding his age and education, before asking him, "[w]hat would you like to tell the jury about [October 14, 2011] and [the] events leading up to October 14, 2011?"
As the defendant testified in narrative form, defense counsel assisted him in publishing two exhibits to the jury. For each exhibit, defense counsel asked the defendant questions about the exhibit's significance and then led him back into his narrative. Also during the defendant's narrative testimony, defense counsel asked the defendant questions to lay the foundation for the admission of a photograph as an exhibit and then published that exhibit to the jury. At one point during the defendant's testimony, the state objected to the defendant's testimony on the ground of relevance. Defense counsel responded to the objection, and a proffer was conducted outside the presence of the jury. At the conclusion of the defendant's narrative testimony, defense counsel then asked him one direct question before the state began its cross-examination.[5]
During the state's cross-examination of the defendant, defense counsel objected nine times. These objections involved claims that certain questions posed by **476 the prosecutor were outside the scope of the direct testimony, not relevant, improper in form, mischaracterizing the evidence, calling for inadmissible hearsay, or argumentative. Defense counsel made and argued each of these objections on behalf of the defendant. Defense counsel then conducted redirect examination of the defendant. The defendant did not testify in narrative form on redirect; rather, defense counsel asked him two pointed questions.[6]
Thereafter, defense counsel argued a motion to preclude the state's rebuttal witness, cross-examined the state's rebuttal witness, submitted proposed jury instructions, participated in the charging conference, and presented closing argument on behalf of the defendant. After the jury returned its verdict, defense counsel filed a motion for a new trial, which was denied. A review of the record in the present case supports the conclusion that the defendant was ably represented by counsel throughout the entire trial, including during his narrative testimony.
Nevertheless, the defendant asserts that State v. Francis , supra, 317 Conn. at 461, 118 A.3d 529, controls the outcome of the present appeal. We disagree. Although Francis made the same claim-namely, that he was compelled to give up his right to counsel in order to vindicate his right to testify on his own behalf-and although we held that Francis was self-represented during his narrative testimony, we find Francis inapposite on the basis of its unique factual circumstances.
Francis was represented by two attorneys. Id., at 452, 118 A.3d 529. The subject of Francis testifying first was addressed **477 when the state objected to his making *1139 statements on the record without being subject to cross-examination. Id. In response, the trial court explained that Francis could make statements on the record only if he chose to testify. Id., at 453, 118 A.3d 529. During this discussion, defense counsel explained that they "had limited contact with [Francis], by [Francis'] choice, and that [Francis'] views could be characterized as not 'reality based.' " Id. Defense counsel further explained that he had not discussed with Francis whether Francis should testify. Id. Defense counsel then informed the trial court that, in the event Francis chose to testify, they "would have to take the position that he is doing so uncounseled and in essentially ... a manner in which he is representing himself." (Internal quotation marks omitted.) Id. Thereafter, defense counsel informed the trial court that, contrary to their advice, Francis intended to testify on his own behalf. Id. Defense counsel further explained that Francis "had declined their offer to help him prepare for testifying and expressed concerns about his competency" to make that decision. Id.
The trial court then explained to Francis that he had a right to choose whether to testify. Id. Francis responded that he wanted to testify, but that his counsel was "trying to legally gag" him. (Internal quotation marks omitted.) Id. He then told the court: "I'd rather speak on my behalf than talk to these two guys here." (Internal quotation marks omitted.) Id., at 454, 118 A.3d 529. Thereafter, defense counsel explained to the court that "based on the defendant's failure to seek their counsel and his belief that counsel was working against him ... should [Francis] take the stand and testify, he will essentially be representing himself" and that "defense counsel would file a motion to withdraw if necessary." (Internal quotation marks omitted.) Id. When the trial court asked the defendant if he wanted to represent himself during his **478 testimony, he ultimately said, "I'll do so ...." (Internal quotation marks omitted.) Id., at 455, 118 A.3d 529.
Following these discussions, the trial court told Francis that he would " 'self-represent' " during his testimony. Id. Specifically, the trial court "warned the defendant of the disadvantages of self-representation and then ruled: 'I have to let him self-represent .... But I'm going to appoint counsel as standby counsel, certainly ... for purposes of objection during the cross-examination.... Well, standby counsel for purposes of his testimony only.' " Id. The trial court then appointed defense counsel to be standby counsel charged with asking "introductory questions and asserting objections during cross-examination, specifically to questions that went beyond the scope of direct examination ...." Id., at 463, 118 A.3d 529.
In concluding that Francis was self-represented when he took the witness stand and provided narrative testimony, this court relied on the fact that the "[trial] court and defense counsel understood the defendant to be self-represented during his testimony." Id., at 461, 118 A.3d 529. With respect to the trial court's understanding that the defendant was self-represented, this court highlighted the fact that, after Francis had been canvassed regarding his choice to represent himself, the trial court ruled that Francis would "self-represent ... during this point ...." Id., at 462, 118 A.3d 529. Then, after issuing its ruling that the defendant would self-represent, the trial court took the additional step of appointing standby counsel for purposes of the defendant's testimony and canvassed the defendant regarding self-representation. Id. Finally, this court pointed out that the trial court's docket sheet contained notations from the court clerk "indicating that, for purposes of *1140 [Francis'] testimony only, [Francis] was allowed to represent himself and standby counsel was appointed ... [and] further indicated that, for the **479 remainder of the trial, counsel was retained to represent [Francis]." Id.
With respect to defense counsel's understanding in Francis , this court highlighted the fact that defense counsel had not had any discussions with the defendant regarding his desire to testify. Id., at 453, 118 A.3d 529. The lack of communication between defense counsel and Francis resulted in counsel's explaining to the trial court that the defendant would be giving testimony that was uncounseled. Id. Indeed, this court noted that defense counsel "made it abundantly clear that they had no intention of representing [Francis] should he testify and would file a motion to withdraw if necessary to avoid doing so."[7] Id., at 461-62, 118 A.3d 529.
**480 The record in the present case is highly distinguishable from Francis . In particular, unlike in Francis , the trial court and defense counsel in the present case understood the defendant to be represented by defense counsel throughout his testimony.
With respect to the trial court in the present case, when defense counsel requested time to speak with the defendant about testifying, the trial court granted a recess for that purpose. When defense counsel notified the trial court that the defendant would be testifying, the trial court did not inform the defendant that he would be representing himself if he testified. The trial court certainly never made a ruling that the defendant would be self-represented *1141 like the trial court did in Francis .
Instead, the trial court canvassed the defendant on his decision to testify and, then, upon defense counsel's request for narrative testimony, canvassed the defendant on testifying in that form. Significantly, during its canvass on the defendant's decision to testify in narrative form, the trial court discussed that this narrative format may cause the defendant's counsel to not be "effective" in his representation. Specifically, the following colloquy occurred:
"The Court: Okay. Now, do you understand by the request, and I can't get into the communications between you and your attorney, but the request ... that [defense counsel ] is making could put him in a position where ... he's not being effective in representing you, do you understand that ?
"The Defendant: Yes, he explained this to me .
**481 "The Court: I'm assuming that, by your discussions with him, you still want to proceed that way?
"The Defendant: Yes, sir.
"The Court: So then are you giving up or waiving your claim of ineffective assistance of counsel on this specific area ?
"The Defendant: Yes , sir.
"The Court: Okay. Is anyone forcing you or threatening you in any way ....
"The Defendant: No, my own volunteer."[8] (Emphasis added.)
The quoted colloquy demonstrates that the trial court in the present case understood the defendant to be represented by counsel during his narrative testimony. Indeed, the trial court notified the defendant that his counsel may not be "effective" during the narrative testimony, thereby acknowledging that he understood him to be represented by counsel. The trial court's understanding in the present case stands in sharp contrast to the trial court's understanding in Francis , in which the trial court explicitly ruled that Francis would be self-represented during his narrative testimony. State v. Francis , supra, 317 Conn. at 454-55, 118 A.3d 529.
Furthermore, the trial court in Francis appointed defense counsel as standby counsel during Francis' narrative testimony. Id., at 455, 118 A.3d 529. The trial court in Francis also "assigned standby counsel the limited role of asking [Francis] introductory questions and asserting objections during cross-examination, specifically to questions that went beyond the scope of direct examination, although standby counsel in fact asserted no objections." Id., at 463, 118 A.3d 529. In the present case, by contrast, the **482 trial court never appointed defense counsel as standby counsel for the limited purpose of the defendant's narrative testimony. In fact, not only was defense counsel not appointed as standby counsel, there was no limitation placed on defense counsel's role. This is entirely consistent with the court's understanding that the defendant continued to be represented by counsel.
It is also evident that, in the present case, unlike in Francis , defense counsel proceeded with the understanding that he continued to represent the defendant. Indeed, as we explained previously in this opinion, defense counsel actively assisted the defendant during his narrative testimony. In particular, during his narrative testimony, the defendant asked defense *1142 counsel to publish exhibits to the jury on two occasions, and his defense counsel responded, "[s]ure." Defense counsel published the requested exhibits in accordance with the trial court's instructions and then guided the defendant back into his narration. In addition, defense counsel assisted the defendant in introducing a photograph into evidence by asking the defendant appropriate questions to lay the proper foundation and then published that exhibit to the jury. Also, the efficiency with which defense counsel published exhibits suggests advance planning between the defendant and defense counsel. Specifically, defense counsel was able to locate and publish the exhibits during the defendant's narrative with little discussion with the defendant as if he knew exactly which exhibit the defendant planned to publish at each point during his narrative testimony. The attorney-client relationship in the present case stands in stark contrast to that in Francis, in which Francis refused to speak with defense counsel about testifying and defense counsel explicitly characterized Francis as being self-represented. State v. Francis , supra, 317 Conn. at 453, 118 A.3d 529. In other words, the defendant's testimony **483 in the present case, although given in narrative form, does not appear to be unguided or uncounseled.
Furthermore, defense counsel's involvement in handling and making objections on behalf of the defendant during both the narrative testimony and the cross-examination demonstrates that defense counsel understood the defendant to be represented by counsel during his narrative testimony.[9] Defense counsel also asked direct questions of the defendant on direct; see footnote 5 of this opinion; and on redirect. See footnote 6 of this opinion. Indeed, defense counsel conducted the entire redirect examination in a question and answer format without any direction from the defendant.
On the basis of the foregoing analysis, we conclude that Francis does not control the present case. Instead, we conclude that, given the facts of the present case, the **484 defendant was not self-represented during his narrative testimony or at any other point during the trial. Therefore, the defendant has failed to establish that a constitutional violation occurred, and his *1143 claim fails under the third prong of Golding .
The judgment is affirmed.
In this opinion the other justice concurred.

The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).

Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly ... (3) [o]ffer evidence that the lawyer knows to be false ...."

See In re Yanique S. v. Frederick T. , 151 App. Div. 3d 1222, 1225, 56 N.Y.S.3d 603 (2017) (The court concluded that counsel fulfilled his ethical obligations by informing the court that he had ethical dilemma, without elaborating or identifying specific ethical rule he relied on, because "an attorney confronted with [such a] situation ... must contend with competing considerations-duties of zealous advocacy, confidentiality and loyalty to the client on the one hand, and a responsibility to the courts and our truth-seeking system of justice on the other. Requiring counsel to put on the record his or her reasons underlying the stated ethical dilemma and the advice proffered to the client related to his or her testimony would not strike the appropriate balance between these competing considerations but rather, would present too great a risk that ... counsel would be forced to reveal client confidences.").

In Golding , this court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) State v. Golding , supra, 213 Conn. at 239-40, 567 A.2d 823 ; see also In re Yasiel R. , 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of Golding ).

At this juncture, defense counsel asked the defendant: "[W]as it your plan that day to kill your father?" The defendant responded, "No, I love my father, I miss him so much. I really miss him so much." Defense counsel then said, "I have no further questions." After that, cross-examination commenced.

Defense counsel asked the defendant the following question: "Have you done your best to tell the truth about what you recall happened on October [14, 2011]?" The defendant responded: "Yes, sir." Defense counsel then asked the defendant the following question: "[W]as it your plan and intent to kill your father on [October 14, 2011]?" The defendant responded: "No, it wasn't." Defense counsel then said: "No further questions, Your Honor."

Our conclusion that Francis was self-represented during his narrative testimony also is supported by this court's determination that the "presentation of [Francis'] testimony was consistent with self-representation." Id., at 462, 118 A.3d 529. Specifically, this court determined that Francis had "actual control of the presentation of his case" because he conveyed an "unguided, uninterrupted narrative ... of the facts he deemed relevant to his case" during his testimony. Id. We take this opportunity to clarify that Francis does not stand for the proposition that any time a defendant presents narrative testimony he is self-represented. Further, "actual control" for the time of narrative testimony does not necessarily equate to self-representation. See, e.g., McKaskle v. Wiggins , 465 U.S. 168, 178, 104 S.Ct. 944, 79 L.Ed. 2d 122 (1984) (discussing "actual control" in context of defendant's representation of himself throughout entire trial with appointed standby counsel); United States v. Frazier , United States Court of Appeals, Docket No. 99-4109 (4th Cir. November 8, 1999) (defendant was not denied right to counsel where he was allowed "to testify in a narrative form without direct examination by defense counsel" and adequate warnings were given by court), cert. denied, 530 U.S. 1250, 120 S.Ct. 2703, 147 L.Ed. 2d 973 (2000) ; People v. Nakahara , 30 Cal. 4th 705, 717, 134 Cal.Rptr.2d 223, 68 P.3d 1190 (2003) ("defendant at no time before, after, or during his narrative testimony 'waived' his right to counsel's assistance" where "counsel was fully available before and after [narrative] statement was given, including cross-examination" but would not conduct direct examination where content of testimony was unknown); cf. Commonwealth v. Mitchell , Docket No. 9673CR0312, 2000 WL 33119695, *25 (Mass. Super. December 18, 2000) (concluding that defendant's presentation of narrative testimony did not deprive defendant of effective assistance of counsel where perjury is concern and "defendant is otherwise vigorously defended" and citing similar cases), aff'd, 438 Mass. 535, 781 N.E.2d 1237, cert. denied, 539 U.S. 907, 123 S.Ct. 2253, 156 L.Ed. 2d 118 (2003). Instead, our review of Francis reveals that this court's conclusion that the defendant was self-represented for the short portion of his trial, in which he testified was not based on the format his testimony took-namely, narrative testimony-but on the unique factual circumstances of that case in which the trial court and defense counsel understood the defendant to be self-represented for his testimony.

Shortly after this discussion, the defendant again confirmed to the trial court that he still wished to proceed "in that form."

To support his argument that he actually controlled his case presentation during his testimony and, therefore, was self-represented, the defendant cites to allegedly harmful evidence that was admitted on cross-examination. The defendant asserts that, although defense counsel objected during cross-examination, the trial court largely overruled these objections and allowed the state's questions regarding harmful evidence because his narrative testimony opened the door to sensitive topics. Specifically, the defendant asserts that, had he been represented by counsel during his testimony, his drug use and activities on October 13, 2011, would not have been a subject of his direct testimony. Consequently, more damaging evidence related to these topics would not later have been admitted on cross-examination. We disagree. First, as we have explained, "actual control" for the time of narrative testimony does not equate to self-representation. See footnote 7 of this opinion. Second, these topics and the related evidence raised on cross-examination would have been introduced and admissible if the defendant had testified in any manner. The defendant's drug use was the impetus for his interest in Satanism and played a central role in his daily activities, particularly on October 13, 2011, when, according to his testimony, he consumed a large amount of drugs. Indeed, he already had presented the testimony of Buchanan, who had testified that the defendant's cocaine use and interest Satanism were related. Thus, we find it difficult to envision a situation in which the defendant would have testified without raising this information to support his defense and, by extension, enabling the state on cross-examination to ask questions relating to his drug use and his activities the day before the murder.