******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* SHANE K.* (AC 46501)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The defendant appealed from the judgment of conviction of assault in the third degree and two counts of criminal violation of a protective order. He claimed, inter alia, that the trial court improperly denied his motion to dismiss or to transfer the case for improper venue because the court, inter alia, incorrectly had concluded that the state constitution did not mandate that a criminal defendant be tried in the judicial district in which the offense occurred. *Held*:

This court declined to consider the merits of the defendant's constitutional and statutory (§ 51-352c (a) and (b)) claims in light of its conclusion that the trial court did not clearly err in finding that the defendant had committed the charged offenses, at least in part, in the judicial district in which he was tried.

The defendant waived his unpreserved claim that the trial court improperly failed to instruct the jury on venue, and, as a result of such waiver, the unpreserved claim also failed under the third prong of *Golding*.

Argued March 21—officially released September 17, 2024

*Procedural History*

Substitute information charging the defendant with two counts of the crime of criminal violation of a protective order and one count of the crime of assault in the third degree, brought to the Superior Court in the judicial district of Ansonia-Milford, geographical area number twenty-two, and tried to the jury before *Hon. H. Gordon Hall*, judge trial referee; thereafter, the court denied the defendant's motion to dismiss or to transfer; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

---

\* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Jeremiah Donovan*, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Matthew Kalthoff*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Shane K., appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1)[1] and two counts of criminal violation of a protective order in violation of General Statutes § 53a-223.[2] On appeal, the defendant claims that the trial court improperly (1) denied his motion to dismiss or, in the alternative, to transfer the case for improper venue, asserting that the court incorrectly (a) concluded that the state constitution does not require a criminal defendant to be tried in the judicial district where the charged offense occurred and (b) applied General Statutes § 51-352c (a) and (b),[3] and (2) failed

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[2] General Statutes § 53a-223 provides: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, subsection (f) of section 53a-28, or section 54-1k or 54-82r has been issued against such person, and such person violates such order.

"(b) No person who is listed as a protected person in such protective order may be criminally liable for (1) soliciting, requesting, commanding, importuning or intentionally aiding in the violation of the protective order pursuant to subsection (a) of section 53a-8, or (2) conspiracy to violate such protective order pursuant to section 53a-48.

"(c) Criminal violation of a protective order is a class D felony, except that any violation of a protective order that involves (1) imposing any restraint upon the person or liberty of a person in violation of the protective order, or (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking a person in violation of the protective order is a class C felony."

[3] General Statutes § 51-352c provides: "(a) A criminal prosecution shall not fail by reason of the fact that the evidence may disclose the crime to have been committed in a town or judicial district adjoining that alleged in

to instruct the jury on venue. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the defendant's claims. The victim, L, became acquainted with the defendant in 2018, and they subsequently were married on July 15, 2018. The defendant thereafter moved in with the victim and her minor daughter, M, at the victim's residence in Bridgeport (residence).

In March, 2021, the victim called the police to the residence because "the dynamic became very toxic and [she] needed third-party interference to remove [the defendant] from the [residence]." On April 13, 2021, the trial court, *Dayton, J.*, issued an order of protection against the defendant, which prohibited him, inter alia, from assaulting, threatening, abusing, contacting, or coming within 100 yards of the victim. Whereupon, the defendant returned to the residence to collect his belongings and moved out. The victim and the defendant did not speak to each other for some time after the defendant had vacated the residence. Later, however, while the protective order remained in effect, the victim and the defendant reestablished communication.

the indictment or information.

"(b) If any person is accused of committing any offense on the boundary or divisional line between any of the towns or judicial districts in the state, or so near thereto as to render it doubtful in which town or judicial district the offense was committed, the town or judicial district which first assumes jurisdiction by issuing process for the arrest and prosecution of the offender, whether the name of such offender is known or unknown, shall have exclusive jurisdiction to charge, present, indict, try, convict and sentence. In such a case, it shall only be necessary for the state, judicial district, town, city or borough to establish the venue alleged in the information, complaint, warrant or indictment by proving that the offense alleged was committed on the boundary of the judicial district or town in which the accused is being tried or so near thereto as to render it doubtful in which town or judicial district the offense was committed.

"(c) The provisions of this section shall not impair the right of the accused to obtain a change of venue."

On June 20, 2021, notwithstanding the protective order, the defendant, the victim, and M stayed at a hotel in Orange to celebrate Father's Day together. Following two days at the hotel, on June 22, 2021, the defendant drove the victim and M back to the residence. That afternoon, the defendant told the victim that he wanted to purchase marijuana in Shelton. The defendant drove the victim and M out of Bridgeport to a certain location and exited the vehicle alone. After returning to the vehicle, the defendant began driving the group back to Bridgeport. While traveling on a highway during the return trip, the victim and the defendant began arguing, and, at one point, the defendant pulled over and told the victim "to get the F out" of the vehicle, which the victim refused to do. After resuming the drive, the defendant stated, "F it, I'll just kill us all," and began repeatedly veering toward the side of the highway, which the victim countered by pushing the steering wheel back to keep the vehicle steady. In an effort to distract the defendant from his attempts to drive off the highway, the victim began "talking very derogator[ily] and very offensively about things that [the defendant] was sensitive to." At that juncture, while continuing to operate the vehicle, the defendant began punching the victim in her face with his right hand. The defendant continued to punch the victim until they were near or in Bridgeport. Once they had returned to the residence, the victim and M exited the vehicle, and the defendant drove away. The victim entered the residence and called the police to report the assault.

The victim later provided the police with a signed, written statement about the assault (victim's statement). In the victim's statement, which was marked as state's exhibit 10 for identification only and not offered by the state as a full exhibit at trial, the victim stated in relevant part that the defendant (1) began punching her while they were in the area of exit 55 on Route 15

southbound and (2) continued to punch her as they crossed over the Sikorsky Bridge and exited Route 15 via exit 52.

Following the assault, a warrant for the defendant's arrest was issued by the Superior Court, geographical area number twenty-two in Milford, which is located in the judicial district of Ansonia-Milford.[4] The defendant subsequently was arrested and charged with, inter alia, criminal violation of a protective order in violation of § 53a-223 (c) (2) and assault in the second degree in violation of General Statutes § 53a-60.

During a pretrial hearing on November 1, 2022, the prosecutor informed the trial court, *Grogins, J.*, of a discussion that he had with the victim earlier that day, which discussion "raise[d] a question in [his] mind as to—it's an incident that allegedly took place in a car, that car ultimately . . . reached . . . Bridgeport, and whether or not that car passed through Milford may not be something that I'm able to prove at trial. It's not an element of an offense. I don't believe that it is anything that impacts the [defendant's] culpability for the case. . . . I disclosed that to [defense counsel] earlier today, I wanted to put that on the record lest there be any question that it was not discussed forthwith."

On November 14, 2022, the state filed a long form information (November 14, 2022 information) charging the defendant with (1) assault in the third degree in violation of § 53a-61 (a) (1), (2) criminal violation of a protective order, predicated on the allegation that the defendant failed to stay 100 yards away from the victim, in violation of § 53a-223, and (3) criminal violation of

---

[4] General Statutes § 51-344 provides in relevant part: "For purposes of establishing venue, the Superior Court shall consist of the following judicial districts:

"(1) The judicial district of Ansonia-Milford, consisting of the towns of Ansonia, Beacon Falls, Derby, Milford, Orange, Oxford, Seymour, Shelton and West Haven . . . ."

a protective order, predicated on the allegation that the defendant intentionally caused physical injury to the victim, in violation of § 53a-223 (c) (2). The November 14, 2022 information did not specify in which judicial district the charged offenses had occurred, but it alleged that the respective offenses had transpired during a drive to Bridgeport.

By way of a motion dated November 15, 2022, the defendant moved to dismiss or, in the alternative, to transfer the case on the basis of improper venue (motion to dismiss or to transfer).[5] In support of the motion, the defendant cited his due process rights pursuant to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant contended that (1) the November 14, 2022 information did not allege that the charged offenses had occurred in the judicial district of Ansonia-Milford, and (2) "[o]n information and belief . . . the best the [s]tate might claim is that the alleged crime[s] occurred somewhere between Shelton and Bridgeport, most likely along the Merritt Parkway[6] in Stratford or Bridgeport"; (footnote added); with the latter two cities situated in the judicial district of Bridgeport,[7] such that the present case was being prosecuted in the wrong venue. The defendant

---

[5] The court, *Hon. H. Gordon Hall*, judge trial referee, received the original copy of the motion to dismiss or to transfer on November 15, 2022, but the defendant did not file the motion with the clerk's office until November 28, 2022.

[6] Evidence was adduced at trial indicating that Route 15 is the route number for the Merritt Parkway.

[7] General Statutes § 51-344 provides in relevant part: "For purposes of establishing venue, the Superior Court shall consist of the following judicial districts . . .

"(3) The judicial district of Bridgeport, consisting of the towns of Bridgeport, Easton, Fairfield, Monroe, Stratford and Trumbull . . . ."

Effective January 1, 2024, the judicial district of Fairfield was renamed as the judicial district of Bridgeport. See Public Acts 2023, No. 23-46, § 26. In the interest of simplicity, we consider any references in the record to the judicial district of Fairfield as referring to the judicial district of Bridgeport.

further argued that, although "typically the question of venue is procedural and not jurisdictional," dismissal of the case was warranted because the state's disclosure on November 1, 2022, concerning new information about the location of the charged offenses, occurred on the eve of trial, such that transferring the case would delay the impending trial. In addition, the defendant maintained that keeping the case in the judicial district of Ansonia-Milford "would subject [him] to a different jury pool than what he would have in Bridgeport and could skew the ultimate result at trial in a manner that could and should have been prevented." Accordingly, the defendant requested that the court dismiss the case or, in the alternative, transfer the case to Bridgeport or to the appropriate district determined by the court following a hearing.

By way of a memorandum of law dated November 25, 2022, the state objected to the motion to dismiss or to transfer. The state argued that venue was proper in the judicial district of Ansonia-Milford because (1) the arrest warrant for the defendant was supported by the victim's statement, in which the victim relayed that the defendant began assaulting her on Route 15 southbound in the area of exit 55, which is located in Milford, (2) at trial, it intended to offer evidence of the defendant stating that the incident in question occurred during a trip from New Haven to Bridgeport, which would corroborate the victim's statement as to the path of travel, (3) General Statutes §§ 54-1d (c)[8] and 51-352c permitted the case to be prosecuted in the judicial district of Ansonia-Milford even if the charged offenses had occurred in full or in part in a neighboring judicial district, such as the judicial district of Bridgeport, and (4) location was not an essential element of the charged

---

[8] General Statutes § 54-1d (c) provides in relevant part: "A criminal cause shall not fail on the ground that it has been submitted to a session of improper venue."

offenses that the state was obligated to prove. As to the defendant's alternative request to transfer the case to a different venue, the state contended that the defendant could not satisfy his burden to prove that he would not receive a fair and impartial trial in the judicial district of Ansonia-Milford. Additionally, with regard to its disclosure on November 1, 2022, concerning the prosecutor's discussion with the victim, the state represented that (1) during the discussion, the prosecutor "sensed that the [victim] may be uncertain as to the path of travel taken by the defendant seventeen months ago," (2) on the basis of the discussion, the prosecutor expected the victim to testify at trial that the charged offenses had occurred, at least in part, in the judicial district of Ansonia-Milford, and (3) "[i]n an abundance of candor," it had disclosed to defense counsel that its evidence "may be vague as to the precise locations of [these] alleged crime[s] in transit."

The matter was tried to a jury on November 28 and 29, 2022. On November 28, 2022, prior to the start of evidence, the state filed an amended long form information (operative information). The operative information, which charged the defendant with the same three crimes as the November 14, 2022 information,[9] alleged that "the following crimes . . . took place, in full or in part, within [the judicial district of Ansonia-Milford] . . . ." That same morning, after hearing argument outside of the jury's presence on the motion to dismiss or to transfer, the court, *Hon. H. Gordon Hall*, judge trial referee, determined that (1) the state had "facially alleged proper venue" in the operative information in compliance with the rules of practice,[10] (2) venue is not

---

[9] Count one of the operative information was identical to count one of the November 14, 2022 information. The state made minor changes to the allegations in support of counts two and three of the operative information relative to the corresponding counts in the November 14, 2022 information, which changes are immaterial for purposes of this appeal.

[10] Practice Book § 36-13 provides in relevant part: "The information shall be a plain, concise and definite written statement of the offense charged.

an issue "of constitutional dimension in this state," but, rather, "more an issue of convenience for the litigants," and (3) the state was not required to prove venue, as it was not an element of any of the charged offenses. The court further determined that (1) the defendant had not demonstrated that he would not receive a fair and impartial trial in the judicial district of Ansonia-Milford and (2) "venue, at least where we sit right now, is proper" in light of the victim's statement; however, without objection from the parties, the court reserved its decision on the motion to dismiss or to transfer so as to permit the parties to develop the record further.

During its case-in-chief, the state called several witnesses, including the victim. The victim testified in relevant part that (1) while at the residence on the afternoon of June 22, 2021, the defendant told her that he wanted to purchase marijuana in Shelton, (2) the defendant drove her and M out of Bridgeport via a highway to get to their destination, although she could not recall any details about the destination, had no independent recollection of the specific highway on which they had traveled, and was not certain whether they ever reached Shelton, (3) during their return trip to Bridgeport, the defendant briefly stopped at a gas station close to a highway before entering the highway, although she could not recall the name of the gas station or the highway, and (4) the defendant began assaulting her while driving on the highway, with the assault continuing to transpire while they passed by multiple highway exits and crossed over a bridge that she believed, without certainty, to be the Sikorsky Bridge. The victim further testified that she had been intoxicated at the time of the assault, which made her "memory of what was going on at that particular time . . . blurry . . . ."

. . . The information shall also contain . . . (4) [a] statement that such crime was committed in a particular judicial district or geographical area, or at a particular place within such judicial district or geographical area . . . ."

The state also called as a witness Charlotte Schmid, an investigator for the Department of Children and Families. Schmid testified in relevant part that (1) she spoke with the defendant following the assault on July 19, 2021, (2) she asked the defendant "about the incident in the car," which reference the defendant "seem[ed] to understand," and (3) the defendant told her that, on the day of the aforementioned "incident," he was driving with the victim and M to New Haven to get medication.

On November 29, 2022, after the state had rested its case-in-chief, the court excused the jury and invited additional argument on the motion to dismiss or to transfer. The court then orally denied the motion, setting forth its reasoning on the record and further indicating that a written decision would follow, which it later issued on December 2, 2022.[11] The court determined that both the judicial district of Ansonia-Milford and the judicial district of Bridgeport constituted proper venues because the record supported finding that the alleged offenses were committed in both judicial districts. In determining that venue was proper in the judicial district of Ansonia-Milford, the court relied on (1) the victim's statement, which reflected that the defendant began assaulting the victim while they were on Route 15 in Milford,[12] and (2) testimony at trial indicating that, on the day of the assault, the defendant drove the victim and M either to Shelton or to New Haven, such that, in either scenario, they would have had to have gone "out of their way to avoid the judicial district of Ansonia-Milford to get back to Bridgeport." The court observed that, although the victim had testified at trial

---

[11] In the December 2, 2022 written decision, the court stated that the motion to dismiss or to transfer was "denied for the reasons articulated at the [November 29, 2022] hearing and herein." (Emphasis omitted.)

[12] The court referenced a map admitted into evidence as state's exhibit 7 to find that, per the victim's statement, the defendant began assaulting the victim while they were in Milford.

that she could not recall the details as to where the assault had occurred, her trial testimony did not recant or contradict the substance of the victim's statement. Furthermore, ostensibly assuming arguendo that the record did not support a finding that the alleged offenses occurred in the judicial district of Ansonia-Milford, the court concluded that dismissal of the case was not warranted by operation of § 51-352c (a) and (b) or § 54-1d (c).

Additionally, the court iterated that venue under Connecticut law is a "procedural matter" concerning the convenience of the parties[13] and that the defendant had not demonstrated any prejudice as a result of his trial being conducted in the judicial district of Ansonia-Milford. Moreover, insofar as the defendant was raising a vicinage claim, the court stated that (1) it was unaware of any authority providing that the vicinage clause of the sixth amendment to the United States constitution[14] applies to the states, and (2) our Supreme Court "has not upheld a right of an accused to be tried within the county or other territorial jurisdiction within which the offense was committed" and the state constitution "contain[ed] no provision restricting the place of trial of persons accused of a crime," citing *State* v. *Pace*, 129 Conn. 570, 572, 29 A.2d 755 (1943).

[13] The court noted that the defendant was not contesting the court's jurisdiction to entertain the case and determined that, on the basis of the record, "the court ha[d] . . . all kinds of jurisdiction, personal, territorial, and subject matter jurisdiction . . . ."

[14] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The vicinage clause of the sixth amendment to the United States constitution "guarantees the right to . . . an impartial jury of the State and district wherein the crime shall have been committed." (Internal quotation marks omitted.) *Smith* v. *United States*, 599 U.S. 236, 244–45, 143 S. Ct. 1594, 216 L. Ed. 2d 238 (2023). "The vicinage right is . . . one aspect of the jury-trial rights protected by the [s]ixth [a]mendment . . . ." Id., 245.

On November 29, 2022, the jury found the defendant guilty on all counts. On February 6, 2023, the court sentenced the defendant to a total effective sentence of ten years of incarceration, execution suspended after five years, followed by three years of probation. This appeal followed. Additional procedural history will be set forth as necessary.

I

We first turn to the defendant's claim that the trial court improperly denied the motion to dismiss or to transfer because the court incorrectly (1) concluded that the state constitution does not mandate that a criminal defendant be tried in the judicial district where the offense occurred and (2) applied § 51-352c (a) and (b). For the reasons that follow, we decline to consider the merits of these claims.

A

The defendant asserts that, contrary to the court's conclusion, the trial of a criminal defendant in the judicial district where the offense occurred is required by the state constitution. The defendant contends that article first, § 19, of the Connecticut constitution, which provides that "[t]he right of trial by jury shall remain inviolate,"[15] encompasses such a requirement.[16] A necessary predicate to this claim is that this purported constitutional requirement was violated in the present case.

---

[15] The defendant refers to article first, § 21, of the Connecticut constitution in identifying the right of trial by jury; however, that right is now contained in article first, § 19. See *State* v. *Langston*, 346 Conn. 605, 633 n.11, 294 A.3d 1002 (2023) ("The right to trial by jury in the 1818 constitution was contained in article first, § 21. The 1965 constitution retained the language of the right but relocated it to article first, § 19, where it currently remains."), cert. denied,      U.S.      , 144 S. Ct. 698, 217 L. Ed. 2d 391 (2024).

[16] We note that General Statutes § 51-352 (a) provides that "[e]ach person charged with any offense shall be tried in the judicial district in which the offense was committed, except when it is otherwise provided." The defendant takes the position on appeal that this statute "seeks to implement a right that is constitutional in dimension."

The defendant maintains on appeal that the record demonstrated that the charged offenses occurred in the judicial district of Bridgeport and that there was inadequate evidence establishing that the charged offenses happened in the judicial district of Ansonia-Milford, where he was tried. We conclude that the court did not err in finding that the defendant committed the charged offenses, at least in part, in the judicial district of Ansonia-Milford. Accordingly, we decline to address the merits of the constitutional question posed by the defendant.

It is well settled that "[w]e . . . do not engage in addressing constitutional questions unless their resolution is unavoidable. Ordinarily, [c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . ." (Internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002); see also *In re Kaleb H.*, 306 Conn. 22, 26 n.3, 48 A.3d 631 (2012) ("[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case" (internal quotation marks omitted)).

Our analysis requires us to review the court's factual finding that the defendant committed the charged offenses, at least in part, in the judicial district of Ansonia-Milford. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Delena* v. *Grachitorena*, 216 Conn. App. 225, 229–30, 283 A.3d 1090 (2022).

In denying the motion to dismiss or to transfer, the court determined that venue was proper in the judicial district of Ansonia-Milford, relying on the victim's statement,[17] a map of the area described in the victim's statement, and testimony elicited at trial to support its finding that the defendant committed the charged offenses, at least in part, in that judicial district. The victim's statement provided that the defendant (1) began assaulting the victim in the area of exit 55 on Route 15 southbound and (2) continued the assault while crossing over the Sikorsky Bridge and later exiting the highway via exit 52. The map of the area described in the victim's statement reflected that the assault began in Milford.[18] During trial, the victim testified that she could not recall the highway on which the assault had occurred and that she vaguely, but without certainty, remembered traveling over the Sikorsky Bridge during the assault. As the court correctly noted, although the victim could not recall at trial the details of where the assault had occurred, none of her testimony contradicted the victim's statement. Additionally, Schmid testified that the defendant informed her that, on the day

---

[17] Although the victim's statement was not admitted as a full exhibit at trial for the jury's consideration, the court relied on the victim's statement in concluding that venue was proper in the judicial district of Ansonia-Milford. The defendant did not brief a cognizable claim of error in his appellate brief challenging the court's reliance on the victim's statement. See *New Milford* v. *Standard Demolition Services, Inc.*, 212 Conn. App. 30, 34 n.1, 274 A.3d 911 (claims of error not briefed on appeal are deemed abandoned), cert. denied, 345 Conn. 908, 283 A.3d 506 (2022). During oral argument before this court, the defendant's appellate counsel asserted for the first time that the trial court could not rely on the victim's statement, as contained in the arrest warrant affidavit, in considering the issue of venue. This claim is not properly before us, as "[i]t is well settled that a claim cannot be raised for the first time at oral argument." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 797 n.12, 256 A.3d 655 (2021).

[18] Otis Vinston, a state police trooper through whom the state offered the map of the area referenced in the victim's statement, testified at trial that the Sikorsky Bridge is located between Milford and Stratford on Route 15. He further testified that, after the victim had called the local police to report the defendant's actions, "it was ultimately determined that [the assault] happened before the Sikorsky Bridge heading southbound on Route 15."

of the assault, he had driven the victim and M to New Haven, which, if true, would lead to the reasonable inference that they drove through the judicial district of Ansonia-Milford while returning to Bridgeport. Accordingly, we conclude that there was sufficient evidence in the record supporting the court's finding that the defendant committed the charged offenses, at least in part, in the judicial district of Ansonia-Milford.

In light of our conclusion that the court did not clearly err in finding that the defendant committed the charged offenses, at least in part, in the judicial district where he was tried, it would serve no purpose for us to address whether our state constitution requires a criminal defendant to be tried in the judicial district where the offense occurred. "Such discussion would be purely academic because it would have no effect on the final outcome of this case." *Pasco Common Condominium Assn., Inc.* v. *Benson*, 192 Conn. App. 479, 508 n.22, 218 A.3d 83 (2019). Accordingly, we decline to consider the merits of the defendant's constitutional claim.

B

The defendant also contends that the court incorrectly applied § 51-352c (a) and (b) in denying the motion to dismiss or to transfer. Taking into account our conclusion in part I A of this opinion that the court did not commit clear error in finding that the defendant committed the charged offenses, at least in part, in the judicial district where he was tried, we need not address the merits of this claim.

In concluding that considering the merits of the defendant's claim is not necessary, we construe the court's decision denying the motion to dismiss or to transfer and briefly examine § 51-352c (a) and (b). As such, our review is plenary. See *CCI Computerworks, LLC* v. *Evernet Consulting, LLC*, 221 Conn. App. 491, 523, 302 A.3d 297 (2023) ("[t]he interpretation of a trial

court's judgment presents a question of law over which our review is plenary" (internal quotation marks omitted)); *Coleman* v. *Bembridge*, 207 Conn. App. 28, 40, 263 A.3d 403 (2021) ("[i]ssues of statutory construction raise questions of law, over which we exercise plenary review" (internal quotation marks omitted)).

In its written decision denying the motion to dismiss or to transfer, after having determined that venue was proper in the judicial district of Ansonia-Milford, the court stated that "the only other venue suggested by the [defendant] as proper [is the] judicial district of [Bridgeport, which] borders [the judicial district of Ansonia-Milford] in the area where [the victim] first swore, and never denied, the offense conduct began . . . ." The court proceeded to conclude that, pursuant to § 51-352c (a) and (b), dismissal of the case was not warranted.[19]

We construe the court's application of § 51-352c (a) and (b) to be premised on the court's implicit assumption, for the sake of argument, that the charged offenses did not occur in the judicial district of Ansonia-Milford as alleged in the operative information. Indeed, the provisions of § 51-352c (a) and (b) are plainly inapposite when, as is the case here, an offense is alleged and found to have occurred in the judicial district where the criminal trial is conducted. See General Statutes § 51-352c (a) ("[a] criminal prosecution shall not fail by reason of the fact that *the evidence may disclose the crime to have been committed in a town or judicial district adjoining that alleged in the indictment or information*" (emphasis added)); General Statutes § 51-352c (b) ("[*i*]*f any person is accused of committing any offense on the boundary or divisional line between any of the towns or judicial districts in the state, or so near thereto as to render it doubtful in*

___

[19] The court did not expressly cite § 51-352c (a) or (b) on the record when it orally denied the motion to dismiss or to transfer on November 29, 2022.

*which town or judicial district the offense was com-mitted,* the town or judicial district which first assumes jurisdiction by issuing process for the arrest and prosecution of the offender, whether the name of such offender is known or unknown, shall have exclusive jurisdiction to charge, present, indict, try, convict and sentence" (emphasis added)).

In short, we interpret the court's decision to reflect that it determined that § 51-352c (a) and (b) would function to militate against dismissing the case *only if* the record did not, in fact, support a finding that the defendant committed the charged offenses, at least in part, in the judicial district of Ansonia-Milford as alleged in the operative information. Given our analysis in part I A of this opinion upholding the court's finding of the same, examining the propriety of the court's application of § 51-352c (a) and (b) would not affect the final outcome of this case, and, therefore, "[s]uch discussion would be purely academic . . . ." *Pasco Common Condominium Assn., Inc.* v. *Benson,* supra, 192 Conn. App. 508 n.22. Accordingly, we decline to consider the merits of the defendant's claim concerning the court's reliance on these statutory provisions.

II

The defendant's remaining claim is that the trial court improperly failed to instruct the jury on venue. We conclude that the defendant has waived this unpreserved claim of instructional error.

The following additional procedural history is relevant to our resolution of this claim. On November 28, 2022, following the initial argument on the motion to dismiss or to transfer, the court stated in relevant part: "I do not find any requirement that venue needs to be proven by the state. It is not an element of any of the offenses charged . . . ." The court further stated that, subject to any objection from the parties, it would take

the motion to dismiss or to transfer under advisement in order to allow the parties to develop the record further. When the court inquired whether the parties had any additional comments, defense counsel responded, "I don't think so, Your Honor." The next day, when the court invited additional argument on the motion to dismiss or to transfer, defense counsel responded that he had "[n]o further argument on that, Your Honor, beyond what I argued the other day." Following additional argument by the state, the court asked defense counsel if he had "[a]nything in response," to which counsel responded, "[n]o, Your Honor." In orally denying the motion to dismiss or to transfer, the court iterated that "the [state is] not required to prove venue, it's not an element of any offense that's charged here . . . ."

The record indicates that, on November 18, 2022, before resuming jury selection that day, the court requested that the parties submit any requests to charge by the following Tuesday, November 22, 2022. Neither party submitted a request to charge. The record further reflects that the court provided the parties with (1) proposed jury instructions at some point prior to the start of evidence, and (2) the final jury instructions on the morning of November 29, 2022. Defense counsel did not object on the record either to the proposed or final jury instructions, whereas the state (1) notified the court at the end of the first day of trial that it wanted to address "one or two things" vis-à-vis the proposed jury instructions and (2) alerted the court following closing arguments the next day to a minor error in the final jury instructions.[20] The court charged the jury following a lunch recess on November 29, 2022. Beyond providing that, with respect to count two of the operative information, the state had alleged that the defendant had violated the protective order by driving the

---

[20] The court did not hold an on-the-record charge conference.

victim to Bridgeport, the jury instructions did not reference the location of the charged offenses or mention venue. Thereafter, when asked whether there were any exceptions to the charge, defense counsel responded, "[n]o, Your Honor."

On appeal, the defendant maintains that his claim of instructional error was preserved by (1) the motion to dismiss or to transfer and (2) "the court's ruling that the question of proper venue would not be presented to the jury . . . ." In the alternative, if his claim of instructional error is unpreserved, the defendant requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[21] The state argues in relevant part that the defendant's claim of instructional error is unpreserved, and, furthermore, that the claim has been waived. We conclude that the defendant's claim is unpreserved and, pursuant to the doctrine of implied waiver, fails under the third prong of *Golding*.

"In the context of jury instructions, a party may preserve for appeal a claim that an instruction . . . was . . . defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . [S]ee . . . Practice Book § 42-16."[22] (Citation omitted; internal quotation marks omitted.) *State* v. *Ramon A. G.*, 190 Conn.

---

[21] "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Roberts*, 224 Conn. App. 471, 486 n.27, 312 A.3d 1086, cert. denied, 349 Conn. 912, 314 A.3d 602 (2024).

[22] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter

App. 483, 493, 211 A.3d 82 (2019), aff'd, 336 Conn. 386, 246 A.3d 481 (2020).

As the defendant concedes, defense counsel neither submitted a written request to charge on the issue of venue nor objected to the jury instructions as charged. Insofar as the defendant maintains that his claim of instructional error was otherwise preserved by way of either (1) the motion to dismiss or to transfer or (2) the court's "ruling" regarding venue, we disagree. There is nothing in the motion to dismiss or to transfer that reasonably could have alerted the court that the defendant sought a jury instruction on venue. Additionally, we disagree with the defendant's contention that the court issued a "ruling that the question of proper venue would not be presented to the jury . . . ." In denying the motion to dismiss or to transfer, the court determined that venue was not an element of the charged offenses for the state to prove, which determination the defendant did not dispute before the trial court.[23] We discern no ruling in the record by the court wholly precluding the submission of venue to the jury, which is no surprise given that the defendant did not make any such request at any point during the criminal proceedings. For these reasons, we conclude that the defendant's claim of instructional error is unpreserved.

objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[23] During closing argument, defense counsel argued in relevant part: "The [victim's] recall wasn't very good about the details of [the] trip home, what bridge she claims to have gone over, what highway they were on, what route they took, where they went and where they stopped. Now the state has suggested to you that those kinds of things are not elements of the offenses that are charged in this case. At the same time, *while it may not be or they may not be elements of the offense*[*s*], that testimony is a fact and it's something that you can consider in determining the credibility of [the victim] or determining the credibility of any witness. So, *while it may not be an element that the state has to show, what bridge, where it started, where it ended,* the fact that somebody know[s] or wouldn't know or didn't know, those kinds of things are things that you can consider in judging their credibility." (Emphasis added.)

In light of our conclusion that the defendant's claim of instructional error is unpreserved, we next consider whether the defendant waived his right to challenge the court's jury instructions, which presents a question of law subject to plenary review. See *State* v. *Ramon A. G.*, supra, 190 Conn. App. 500.

"Our analysis begins with the seminal decision of *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), in which our Supreme Court established a framework under which we review claims of waiver of instructional error . . . . In *Kitchens*, the court emphasized that waiver involves the idea of assent . . . and explained that implied waiver occurs when a defendant had sufficient *notice* of, and accepted, the instruction proposed or given by the trial court. . . . More specifically, the court held that when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. . . . The court further explained that [s]uch a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ramon A. G.*, supra, 190 Conn. App. 500–501. "In *Kitchens*, our Supreme Court explained that the doctrine of implied waiver, when applicable, bars recourse under *Golding*, as [a] constitutional claim that has been waived does not satisfy [its] third prong . . . because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived

the defendant of a fair trial  . . . ."[24] (Internal quotation marks omitted.) Id., 503 n.13.

The record demonstrates that the defendant failed (1) to submit a written request to charge, (2) to raise any objection on the record to the court's proposed jury instructions, which were provided in advance, or (3) to take exception to the jury instructions immediately after the court had delivered the charge. Thus, despite being given ample opportunity, the defendant did not pursue the venue instruction that he now claims that the court improperly failed to charge. Under these circumstances, we conclude that the defendant has waived his claim of instructional error. See, e.g., *State v. Robert B.*, 200 Conn. App. 637, 649, 240 A.3d 1077 (2020) (defendant waived claim of instructional error when he failed to submit request to charge, to ask court to include instruction at issue after he had reviewed court's proposed charge, or to take exception to charge as given). We further conclude that, as a result of said waiver, the defendant's unpreserved claim of instructional error fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

_____

[24] We may analyze the defendant's claim under the third prong of *Golding* without addressing *Golding*'s first two prongs. See *State* v. *Jan G.*, 329 Conn. 465, 472–73, 186 A.3d 1132 (2018).